Judge Underwood
delivered the opinion of the Court.
Nathaniel Sanders instituted an action of covenant in the Franklin circuit court, against Charles Buck, Peter C. Buck, Clemant Bell, and Daniel Weisiger. Process having been returned as to Peter C. Buck, “no inhabitant of Franklin, coun *477 “¿y,” and executed as to the other defendants; the suit was abated in relation to Peter C, Buck, and judgment rendered against the other defendants, for $4134, in damages and the costs of the suit, at the October term, 1825, of the circuit court. On the 29th of October, 1825, a recognizance was entered into, in the words and figures, following, to wit:
Nathaniel Sanders vs. Charles Buck.
} > }
In covenant.
This day, the defendants, Charles Buck, Peter C. Buck, Daniel Weisiger, ClemantBeli, together with Thomas Helm, their security, came into my office, as clerk of the Franklin circuit court, and undertook that they would satisfy and pay Nathaniel Sanders, his judgment and costs, amounting to four thousand one hundred and forty-three dollars, and ninety-one and a half cents, rendered in his favor, against the said Bucks, Weisiger, and Bell, by this court, within two years, with legal interest on the whole amount thereof,. from this date, October, 29th 1825.
CHARLES BUCK, seal.
P. C. BUCK, (by J. Swigert, his attorney in fad,) seal.
CLEM ANT BELL, seal.
DANIEL WEISIGER, seal.
THOMAS HELM, (by J. Swú gert, his attorney in fad,) seal.
On the 10th December, 1827, a writ of error, coram vobis, with supersedeas, issued upon the order of two justices, the same having been applied for, by the cognizors, with a view to procure the quashal of the recognizance, and the execution which issued thereon, in the name of Robert Sanders, as administrator of Nathaniel Sanders. The errors, assigned in the petition for the writ, are as follows:
1st. The replevy bond or recognizance, is not taken, according to law.
2d. It is not witnessed, as required by law.
3d. It purports to have been taken upon a judgment, in the name of Nathaniel Sanders, against *478 Charles Buck, Peter C. Buck, Daniel Weisiger, and; Clemaht Bell, when in fact, there was no such judg-
Oef’ts. entering into recognizance, replevin bond in clerk’s of-flue, and ob-gaHndub le* gence thereby, cannot ^uashiToa ground, that it is not witnessed.
4th. It does not appear, that said recognizance was entered into, before the clerk of the Franklin circuit court, or any person authorized to take the same.
5th. The execution which issued upon said recognizance, is notin the name of said Nathaniel Sanders, he being dead; but in the name of Robert Sanders, as his administrator. The death of said Nathaniel: never having been suggested, or the proceedings renewed in the name of his administrator.
The circuit court upon the errors assigned, quashed the recognizance. Sanders’s administrator excepted, and has prosecuted a writ of error, with supersedeas. It will not be necessary to notice, particularly, the first assignment of error, because, owing to its general and comprehensive character, every tiling embraced by it, will be considered in adjudicating upon the more particular and special assignments of error, which have been made.
As to the 2d. assignment of error. The form observed in the recognizance, taken substantially, pursues that given by the act of assembly. See I. Dig. 502-3. After prescribing the form, the act says, “which recognizance shall be dated, and shall be signed by the defendant or defendants, giving the game, and the security or securities, and witnessed^ an^ have the force and effect of a replevin bond.” The objection is, that the recognizance has not been witnessed, as required by law. It may be remarked, that the statute does not prescribe who-shall witness the recognizance. But as the recognizance is an official paper, we are inclined to think that it was in the contemplation of the legislature, that the clerk should be the witness. It is not said, however, whether it shall be the clerk, or a stranger; neither is the mode of attestation or witnessing, prescribed, as is done in' the statute, relating to wills. If the statute had made the validity of the recognizance depend upon the fact, whether there was or nota subscribing witness to it, and declared it invalid,unless *479 there was, there could be. no doubt of its invalidity, where there is, as in this case* no such witness; but when the statute merely directs that it should be nessed, without stating how, and without prescribing the consequences of a failure, it leaves these things to be determined by the judgment of courts, based upon a sound interpretation of the design and objects of the statute. Why was a witness required? In whose favor was his testimony to operate, and what fact was designed to be established by the witness? We answer, that to have it shewn, that the recogni-sance was fairly executed, without fraud, or imposition, in case the cognizors should thereafter dispute, it seems to 11s the main f' ign in requiring a witness. As the plaintiff’s judgmefu would be suspended by the execution of the recognizance, there is a propriety in having a witness/or him, to testify that the were fairly bound by the recognizance, the more especially, as the plaintiff may not be present at the time the recognizance is executed, and may know nothing of this esparte proceeding of the defendants. It seems to us therefore, that when the statute speaks of the recognizance being witnessed,, that its object was to guard the rights of the plaintiff, who is not presumed to have any concern or control over the' exparle proceedings of the defendants. Whose duty is it to see that the law is complied with, in having tlie recognizance witnessed? It is unquestionably not the plaintiff’s, who knows nothing-of its execution; but it is the duty of the defendants, who, by complying with the law, are to obtain indulgence. Can they fail to have it done, and then say, because we have failed, we will regard the recognizance as a nullity, after procuring two years indulgence by it? We shall not permit them thus to avail themselves of their own wrong, when the plaintiff is willing to consider their recognizance valid, and when they do not pretend, that it was never executed by them. To us it seems that the spirit of the statute is complied with by such a decision.
If the plaintiff were moving to quash the recognizance because the defendants, in their esparte proceedings, had not complied with the law, it would present a different question. ' In that event* the princi- *480 p]es 0f the case of Hardin vs. Owings, I. Bibb, 214* might apply. But we are not willing to concede that recognizance in this case is not witnessed as requited by law. It is true, that there does not appear to be any attestation by a subscribing witness; but it does not follow, that the clerk may not hhve been present, and'in fact, have witnessed the execution and acknowledgement of the recognizance. We think the recognizance contains intrinsic evidence, from which it may be fairly presumed, that the clerk of the court, or one of his deputies did witness the transaction. It is therein stated, that the cognizor “came into my office, as clerk of the Franklin circuit court, &c.” *
if only.defect 6i recoym-of clerk’s name, as wit.ness, His cler* ical misprision and a-able. ntincprQ tunc.
if execution issue against judgment is agamstone tmly, esecution, and any replevin bond taken thereon, in which both are compelled to II-liile, will be quashed.
*480 By law, it is the duty of the 'cognizors, “to appear before the clerk of the court, entering up the judg-ment5 &c.” If, therefore, these things are done, and which, from the recognizance and law, we should presume to be rightly done, until the contrary appears, and the clerk has failed to put down his name as an attesting witness, and that were indispensable, it should be regarded as a mere clerical, misprision, amendable nunc pro tunc. For the body of the recognizance shews that it is an official act of the clerk, and furnishes intrinsic evidence, that the clerk did witness its execution, and -would well justify the concluding formality, of attesting, as a subscribing witness, by way of amendment, if that were indispensable. We do not perceive any thing formidable, therefore, in the objection, that the recognizance was not witnessed.
As to the 3d. error relied on. It is admitted, that the recognizance is incorrect, in point of fact, so far as it conveys the idea, that the judgment was rendered against P. C. Buck. For, although, he had been a defendant to the action, yet it was abated, as to him, by the sheriff’s return; and he was no party to the judgment. Is this error fatal to the recognizance?
If an execution issue against two, when the judgment is against one only, the execution, and any re-pfoyjn bond, taken in pursuance of it, in which both are compelled to unite, will be quashed as erroneous. See Bridges &c. vs. Caldwells, II. Marshall, 196; Monel vs Bamer, IV. Litt. 10. What is the *481 reason oi this? Because, by the proceeding, an individual is coerced by the officer of the law, in virtue of erroneous process, to submit to injustice. It is Contended, that these cases are analogous in principle, to the present. We think otherwise.
But if four persons be sued,&judgment against three only, all four enter into recognizance, with security, in clerk’s office, to pay judgment against all four of them, they cannot quash recognizance, on ground that there is no suchjudg meiit. Provided it appear, that re-] cognizance was given in satisfaction of the judgment against the three.
Here there has been no compdlsion. Instead of the cognizors being constrained, they have volunteered. They have taken the burden on themselves; it has not been forced on them. We conceive, therefore, that the cases cited are not analogous to the present. The only question with us upon this assignment is; does it appear with sufficient certainty, that the recognizance in question, was given in satisfaction of the judgment against C. Buck, Weisiger, and Bell? They had a right under the statute, by entering into a recognizance, in the clerk’s office, a form tor which is given, to exempt themselves from the costs of replevying. If they have availed themselves of this privilege, and this recognizance was by them Intended, and executed as a sati-faction of Sanders’s judgment, and Sanders has accepted it as such; then we are of opinion, that the recognizance is valid and binding, notwithstanding the error in stating the judgment to be against said Bucks, instead of C. Buck. That the recognisance was intended and executed for this purpose, we have no doubt. The judgment was rendered on the 27th October, 1825; the recog-hizance entered into two days thereafter. Their amounts making alldwanee for the costs; correspond. The clerkin making out the record of the suit, Sanders vs. Buck, &c. gives the recognizance as an appendage to it. Even the error complained of, may be accounted for from the fact, that P. C. Buck, was a party in the writ and declaration, though not in the judgment. The defect is not as striking as many which t'nis court has refused to regard as fatal to the rights of parties. See Bank of Kentucky vs. Lacy and Cox, I. Mon. 7.
The case of Bridges vs. Caldwells shews, that a replevin bond cannot be quashed for every inaccuracy. The case of Smiley vs. Thomas, supports this recognizance. In the case of Smiley vs. Thomas, the circuit court quashed a traverse bond, because in its condition, it set out an inqusition of *482 forcible entry, in a case in which Benjamin Thomas was plaintiff, and Jesse Smiley and Zachariah Greet! defendants, when in truth there was no such case, for Green,^ instead of being a defendant, was •merely the security in the traverse bond. This court reversed the decision of the circuit court, upon the ground that the error was not sufficient to vitiate the bond.
■Mieout ex*/ oution on re-eoguizance, in nature of gtvenVt0 intestate, with-ou¿ reviving y scire facias.
The fourth'error assigned is, we think, sufficiently negatived by the fate of the recognizance. It is expressly said, that the cognizors “ came into my office, as clerk, &c.’’ That is a sufficient answer.
The ñlh. error relied on, could not authorize the judgment quashing the recognizance, even if it were sufficient to quash the execution which issued in the. name of Robert Sanders, as administrator of Nathan-¡{q Sanders. But we are of opinion, it is not sufficient for this latter purpose. See I. Dig. 511. If the defendantsin error, had denied that Robert Sanders was in fact the administrator of Nathaniel, and Qn j_|ie crfaf 0f an issue, formed on that point, it had been found he was not administrator, the execution in his name ought to have been quashed. The objection seems to be predicted on an admission that he is administrator; but that it was improper to take out execution in his name, until a revivor by scire facias. We think such a course is dispensed with by the statute, and certainly, considerations of policy favor the construction. It obviates delay, and saves expense. We cannot conjecture what object the legislature had in view, unless to rid plaintiffs of the delay, and defendants of the expense attending a revivor by scire facias, and to give executors and administrators the same rights they would have possessed, in case they had revived by scire facias.
Cognizors and obligors, in replevin bonds, are not deprived of remedy to arrest one proceeding as executor or adminstrator, when in ttruth, he is not the executor or administrator.
Upon a careful examination of all the errors assigned, we have found none of them tenable.
Haggin and Monroe, for plaintiff; Denny and Talbot, for defendants.
Wherefore, 'the judgment of the circuit court is reversed, and the cause remanded, with directions to renderjudgment for the plaintiiF; dismissing the writ with costs and damages.
The plaintiff in error, must recover his costs in this court.