CASE 71—INJUNCTION—OCTOBER 22.

# The Maysville & Lexington Turnpike Road Company v. Wiggins.

APPEAL FROM NICHOLAS CIRCUIT COURT.

1. PURCHASE OF TURNPIKES BY COUNTY UNDER THE ACT OF MARCH 17, 1896—CONSTITUTIONAL LAW.—The act of March 17, 1896, authorizing the counties of the State to purchase turnpikes, is not a violation of section 179 of the Constitution prohibiting the General Assembly from authorizing "any county * * * * to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association or individual, except for the purpose of constructing or maintaining bridges, turnpike roads or gravel roads."

2. SAME—PLEADING.—In an action to prevent the consummation of a contract by the county to purchase the turnpike of the appellant at $23,000, payable in installments of $2,000 a year, the allegation "that said indebtedness is an amount exceeding in the year 1897 the income and revenue provided for such year by said court, which revenue is 34 cents on the one hundred dollars' worth of property in said county, and levied for the following purposes: 15 cents for the sinking fund and to meet outside indebtedness, and 4 cents to subscription to the Barefoot Turnpike Road Company, and 15 cents for current expenses," is not sufficient in the absence of allegations as to the indebtedness of the county in the aggregate, or that payable in 1897, or what is the amount of taxable property to raise

The Maysville & Lexington Turnpike Road Company v. Wiggins.

the question whether the contract is a violation of section 157 of the Constitution limiting indebtedness created in each year to an amount within the income and revenue provided for such year.

3. THE ACT OF MARCH 17, 1896, AUTHORIZING FREE TURNPIKES— CONSTITUTIONAL LAW.—The act of March 17, 1896, is not a violation of section 60 of the Constitution prohibiting special or local legislation.

4. ACT AUTHORIZING FREE TURNPIKES—ELECTION.—The fact that the proposition to have free turnpikes and gravel roads carried by a two-thirds vote of the voters voting upon the proposition, would not authorize an increase in the indebtedness beyond the amount provided for by the income and revenues in the current year.

KENNEDY & WILLIAMSON FOR APPELLANTS. (NORVELL & ROBINSON, JOHN F. MORGAN, TURNER & HAZELRIGG, OF COUNSEL.)

1. It is the duty of the court to carefully re-examine a decision when the question involves important public or private rights. Cooley's Const. Lim. (5 ed.), note to page 65.

2. It is always permissible, in construing a constitutional provision, to inquire into the prior state of the law and the circumstances attending the making of the Constitution. And the construction given a section by the Legislature carries great weight. McClure v. Alexander, 15 Ky. Law Rep., 732; Cowan v. Prowse, 93 Ky., 156.

3. The Legislature has construed that clause of section 157, under consideration, in an "act to provide for free turnpike and gravel roads." Acts Gen. Assembly of Ky., 1896, p. 43.

4. The Belknap case should be overruled; it is contrary to principle and authority. When two-thirds of the voters voting on the bond issue in Montgomery county voted in favor of same, the proposition carried. Kentucky Con., sec. 157; Metcalfe v. City of Seattle, 1 Wash., 302; Armour v. Board of Finney County, 41 Fed. Rep., 321; State v. Barnes, 3 N. Dak., 319; Walker v. Oswald, 68 Md., 155; Gillespie v. Palmer, 20 Wis., 544; Commissioners v. Winkley, 29 Kan., 36; State v. Grace (Oregon), 25 Pac. R., 382; Stanford v. Prentice, 28 Wis., 358; Holcomb v. Davis, 56 Ill., 413; State v. Echols, 41 Kan., 1; Smith v. Proctor, 130 N. Y., 319; McGoodwin v. City of Franklin, 18 Ky. Law Rep., 752; Knox

The Maysville & Lexington Turnpike Road Company v. Wiggins.

County v. Ninth National Bank, 147 U. S., 91; Carroll County v. Smith, 111 U. S., 556; Douglass v. County of Pike, 101 U. S., 677; Yesler v. Seattle, 1 Wash., 308; Richardson v. McReynolds, 114 Mo., 641; Vance v. Austell, 45 Ark., 406; Dillon on Municipal Corporations (4 ed.), sec. 277; McCreary on Elections (3d ed.), sec. 173; Sudbury Parish v. Stearns, 21 Pick. (Mass.), 154.

5. It is a well-settled rule of construction that where a clause is taken from the Constitution of a State it will be presumed that it was adopted in the Constitution of another State, with the construction given it by the court of the State from whence taken. Carney v. Hampton, 3 T. B. M., 228; Allen v. Ramsey, 1 Met., 635; Barbour v. City of Louisville, 83 Ky., 95; Black on Constitutional Law., p. 68; Am. & Eng. Enc. of Law, vol. 6 (2d. ed.), p. 935; People v. Coleman, 4 Cal., 46; 60 Am. Dec., 581; Appollos v. Brady, 4 U. S. App., 209; Gulf, Colorado R. R. Co. v. Johnson, 10 U. S. App., 629; Metropolitan R. R. Co. v. Moore, 121 U. S., 558; Endlich on Interpretation of Statutes, sec. 30; Cooley on Const. Lim. (5th ed.), p. 64; Mattox v. United States, 156 U. S., 243; Sutherland on Statutory Construction, sec. 256.

6. The cases cited in the Belknap opinion, in support thereof, are either overruled or discredited by the following decisions: Armour Bros. v. Board of Finney County, 41 Fed. Rep., 321; Knox County v. Ninth National Bank, 147 U. S., 99; Douglass v. County of Pike, 101 U. S., 677; State v. Binder, 38 Mo., 450; Holcomb v. Davis, 56 Ill., 413; Richardson v. McReynolds, 114 Mo., 641; Dunnovan v. Green, 57 Ill., 67; Chestnut v. Hood, 68 Ill., 138; Melvin v. Lisender, 72 Ill., 67; Stanford v. Prentice, 28 Wis., 538.

7. The "free turnpike act" is not unconstitutional. The county can purchase turnpikes. Ky. Con., sec. 179; Sutherland on Stat. Con., sec. 246.

8. The "free turnpike act" is not a local, but a general law. Ky. Con., secs. 59, 60; Com. v. Weller, 14 Bush, 218; Debates Const. Con., vol. 4, pp. 5,764; 5,770; 5,773; Black on Const. Law, p. 276; Am. & Eng. Enc. of Law, vol. 3 (1st ed.), pp. 695-698.

9. If the "free turnpike law" is a local law, it is not unconstitutional. Am. & Eng. Enc. of Law, vol. 3 (1st ed.), 695-698; St. Louis v. Shields, 62 Mo., 247; Mosier v. Hilton, 15 Barb. (N. Y.), 657; Johnson v. Railroad, 23 Ill., 202.

10. The case of M. & L. T. P. Road Co. v. Wiggins should be re-

The Maysville & Lexington Turnpike Road Company v. Wiggins.

versed on the pleadings. Anderson v. City of Mayfield, 93 Ky., 230; Field v. Stroube, 19 Ky. Law Rep., 1751.

WINFIELD BUCKLER FOR APPELLEE.

1. Section 179 of the Constitution absolutely prohibits a county from in any way dealing with a corporation. Debates of the Con. Convention, pp. 2649, 2655; Winchester & Lex. Turnp. R. Co. v. Vimont, 5 B. M., 1; Am. & Eng. Enc. of Law, vol. 9, p. 364; Angell on Highways, sec. 9.
2. The indebtedness of $23,000 is in conflict with section 157 of the present Constitution. O'Mahoney v. Bullock, 97 Ky., 774; Beard, &c., v. City of Hopkinsville, 95 Ky., 239.
3. The act of March 17, 1896, is contrary to sections 59, 171, 181 of the Constitution.

J. H. MINOGUE, ALSO FOR APPELLEE.

1. The Fiscal Court had no right to purchase fourteen miles of turnpike from the appellant, when at the time the contract for purchase was made its own record showed conclusively that the purchase price creating a debt of $23,000 exceeded the revenue and income provided for the year in which the purchase was made, and no election having ever been held for the purpose of ascertaining the consent of two-thirds of the voters voting at the election to create the said debt. Sec. 157 of the Con.; O'Mahoney v. Bullock, 97 Ky., 774.
2. The Fiscal Court had no power to levy and tax, or attempt to levy and tax, or take any levy previously made to pay the debt or any part of the debt it has contracted in violation of section 157 of the Constitution.
3. The Fiscal Court had no right in 1898, when confronted with an illegal act, to deny its own record made in 1897, when made a public document. Starkey on Evidence (9th ed.), p. ——.
4. The Fiscal Court had no right to make a contract creating a debt or make a levy to pay for a contracted debt when at the time the debt was contracted there were no means on hand to pay, nor no part of the tax rate of 50 cents as provided in section 157 of the Constitution as the maximum limit remaining, out of which a levy was made to liquidate the debt or any part of it.
5. The Fiscal Court had no power or authority to purchase turnpikes at any price. Con., sec. 179.

6. The appellant's position is in conflict with Belknap v. City of Louisville, 93 Ky., 444 (18 Ky. Law Rep., 313); O'Mahoney v. Bullock, 97 Ky., 774; McGoodwin v. City of Franklin, 18 Ky. Law Rep., 752; Field v. Stroube, 19 Ky. Law Rep., 1751.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

After a favorable vote upon a submission of the question to the voters of Nicholas county at the regular election in November, 1896, whether they were "in favor of free turnpikes and gravel roads," in pursuance of the act of March 17, 1896, the fiscal court in November, 1897, entered into a contract with the Maysville & Lexington Turnpike Road Company, by which it purchased, at the price of $23,000, payable in yearly installments of $2,000 each, some fifteen miles of the road situated in Nicholas county. Thereupon Wiggins, a taxpayer of the county, for himself and others, instituted his action to enjoin the levy of any tax on behalf of the contract of purchase, and to have the contract declared void, on the following grounds: 1. Notwithstanding the authority to make the contract is conferred in the act in question, the Constitution, by section 179, prohibits counties from buying turnpikes or gravel roads from any company, association, or corporation; and therefore the act of March, 1896, is unconstitutional. 2. The contract incurs an indebtedness in an amount exceeding, in the year 1897, the income and revenue provided for that year; and no election has been held to obtain the assent of the voters of the county, as provided in section 157 of the Constitution.

The first contention is easily disposed of. Section 179 of the Constitution reads as follows: "The General Assembly shall not authorize any county or subdivision thereof, city, town or incorporated district, to become a stockholder in any company, association or corporation, or

The Maysville & Lexington Turnpike Road Company v. Wiggins.

to obtain or appropriate money for, or to loan its credit
to, any corporation, association or individual, except for
the purpose of constructing or maintaining bridges, turn-
pike roads or gravel roads: provided, if any municipal cor-
poration shall offer to the Commonwealth any property or
money for locating or building a capitol, and the Common-
wealth accepts such offer, the corporation may comply with
the offer." It needs no argument to show that this pur-
chase from the company of its turnpike road, together
with all its "rights, privileges, and appurtenances," as ex-
pressed in the contract of purchase and conveyance to the
county, does not make the county a stockholder in the
company; nor does the county thereby appropriate money
for, or loan its credit to, the company. It is said this
seems clear enough with respect to the question of the
county becoming a stockholder and of loaning its credit,
but that it is certainly an appropriation of money for the
company. We think not. To buy and pay for the road-
bed, toll houses, rights, and privileges of the company is
not to "appropriate money for" the company, within the
meaning of the Constitution. The appropriation is not
"in aid of," "for the sake of," or "on account of" the com-
pany, and is therefore not an appropriation for the com-
pany. It is not a gift or loan of credit to the company. In
fact, the company, as to the purchased property and the
exercise of further right thereover, becomes extinct, and
no longer exists in Nicholas county. But, if it be such an
appropriation, it is authorized because of the right con-
ferred in the section on the county to make same for the
purpose of constructing and maintaining such roads. It
is too narrow a construction of this language to say a

[35]

county may construct and maintain, but may not buy, such roads when already constructed.

The second ground presents more difficulty. Section 157 of the Constitution precludes the county from becoming indebted in an amount exceeding, in any year, the income and revenue provided for such year, without a vote of the people, as prescribed in the section. It is admitted that no vote has been taken under this section, and it is left to us only to determine from the pleadings whether such an election is shown to be necessary, and that depends upon whether, by the creation of such a debt, the county will become indebted beyond the constitutional limit fixed in this section. It is to be noticed that it is not contended that the aggregate debt of the county is in excess of the absolute limitation of indebtedness prescribed in section 158. Admittedly, when that limit is reached, no further indebtedness can be incurred in any event or authorized by any vote. With reference to this debt of $23,000, the petition avers "that said indebtedness is an amount exceeding, in the said year, 1897, the income and revenue provided for such year by said court, which revenue is 34 cents on the $100 worth of property in said county, and levied for the following purposes: 15 cents for the sinking fund and to meet outside indebtedness, and 4 cents to subscription to the Barefoot Turnpike Road Co., and 15 cents for current expenses." These are the only averments in the pleadings on this subject, and the averment that the indebtedness created by purchase of the turnpike road—the indebtedness of $23,000—is in an amount in excess of the income and revenue provided for for that year is specifically denied by the answer. This is claimed by Wiggins to be a sham plea, but it is altogether probable that the denial is true. The income and revenue

for the county for the year were doubtless largely in excess
of $23,000. We know from an exhibit filed by the answer
that this 34 cents on the $100 was not the whole of the levy
provided for that year, and this fact we can take notice
of as against the pleader, although it can not be used to
help out his petition. Whether this additional levy will
produce an income sufficient, with the levy of 34 cents, to
pay off all indebtedness created or to be paid that year,
including the $23,000, depends upon the amount of taxable
property in the county. We are nowhere told what is the
indebtedness of the county in the aggregate, or that paya-
ble in 1897, or what is the amount of its taxable property.
These facts must be known before the question attempted
to be raised can be passed on intelligently. As the plead-
ings stand, the plaintiff was not entitled to the judgment
enjoining the levy proposed. Appellee should, however,
be permitted to amend his pleadings and make them more
definite.

It is suggested by counsel for appellant that, as the
proposition to have free turnpikes and gravel roads carried
by a two-thirds vote, the indebtedness incurred by the pur-
chase is not inhibited by the Constitution, under the sec-
tion we have been considering. It is manifest, however,
that a vote on the question of having such roads free is
not a vote to increase the indebtedness beyond the consti-
tutional restriction; and we need not, therefore, inquire
into the effect of the conceded fact that "free turnpikes"
carried in Nicholas county by a majority of two-thirds of
those voting on the question, and not by two-thirds of all
those voting at the general election. The act only re-
quired a majority of those voting on the question, and, al-
though a majority of two-thirds of those voting on the
question voted for free turnpikes, the question of incur-

ring the proposed indebtedness is not thereby affected or the indebtedness thereby authorized. The contention of counsel for appellee that the law of March 17, 1896, is special and local, because operative or effective only on a vote of the people, is without merit, as the Constitution in express terms provides that such a law may be passed with respect to this particular subject-matter. Constitution, section 60. For the reasons indicated the judgment is reversed, for further proceedings consistent herewith.